**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE ROTAVIRUS VACCINES ANTITRUST LITIGATION | No. 2:18-cv-01734-JCJ (consolidated)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| STATEMENT OF FACTS | 1 |
|     A.  Plaintiffs' Claims Arise from RotaTeq Purchases Pursuant to Contracts | 1 |
|     B.  Plaintiffs Agreed to Arbitrate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. | 2 |
| ARGUMENT | 3 |
| I.    PLAINTIFFS MUST ARBITRATE THEIR CLAIMS | 5 |
|     A.  Plaintiffs' Claims Are Within the Scope of the Arbitration Agreements. | 5 |
|     B.  Plaintiffs Are Bound by the Arbitration Agreements. | 6 |
| II.   PLAINTIFFS MUST ARBITRATE ON AN INDIVIDUAL BASIS | 7 |
| III.  THE COURT SHOULD STAY PROCEEDINGS PENDING ARBITRATION | 9 |
| CONCLUSION | 9 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrams v. Chesapeake Energy Corp.*,
　No. 16-cv-1343, 2017 WL 6541511 (M.D. Pa. Dec. 21, 2017) .................................................5

*Aluminum Bahrain B.S.C. v. Dahdaleh*,
　17 F. Supp. 3d 461 (W.D. Pa. 2014)..........................................................................................7

*Am. Express Co. v. Italian Colors Rest.*,
　570 U.S. 228 (2013)...................................................................................................................4

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
　475 U.S. 643 (1986)...................................................................................................................6

*Battaglia v. McKendry*,
　233 F.3d 720 (3d Cir. 2000).......................................................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
　114 F.3d 1410 (3d Cir. 1997).....................................................................................................2

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
　584 F.3d 513 (3d Cir. 2009).......................................................................................................4

*Champ v. Siegel Trading Co.*,
　55 F.3d 269 (7th Cir. 1995) .......................................................................................................8

*Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC*,
　No. 14-cv-0620, 2017 WL 1541659 (M.D. Pa. Apr. 28, 2017)..................................................8

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
　809 F.3d 746 (3d Cir. 2016).......................................................................................................7

*Dean Witter Reynolds Inc. v. Byrd*,
　470 U.S. 213 (1985)...................................................................................................................4

*Dominium Austin Partners, L.L.C. v. Emerson*,
　248 F.3d 720 (8th Cir. 2001) .....................................................................................................8

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
　269 F.3d 187 (3d Cir. 2001).......................................................................................................7

*Emp'r. Trs. of W. Pa. Teamsters v. Union Trs. of W. Pa. Teamsters*,
　870 F.3d 235 (3d Cir. 2017).......................................................................................................4

*Eshagh v. Terminix Int'l Co.*,
   588 F. App'x 703 (9th Cir. 2014) ..................................................................................8

*Esis, Inc. v. Coventry Health Care Workers Comp., Inc.*,
   No. 13-cv-2957, 2016 WL 928667 (E.D. Pa. Mar. 9, 2016) ................................................6, 7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)..........................................................................................................4

*Invista S.A.R.L. v. Rhodia, S.A.*,
   625 F.3d 75 (3d Cir. 2010)..............................................................................................6, 7

*Lenox Corp. v. Blackshear*,
   226 F. Supp. 3d 421, 432 (E.D. Pa. 2016) ....................................................................4

*Lincoln Univ. of the Commw. Sys. of Higher Ed. v. Lincoln Univ. Chapter of the
   Am. Ass'n of Univ. Professors*,
   354 A.2d 576 (Pa. 1976)................................................................................................6

*Lloyd v. Hovensa, LLC*,
   369 F.3d 263 (3d Cir. 2004)...........................................................................................9

*Lukens Steel Co. v. United Steelworkers of Am.*,
   989 F.2d 668 (3d Cir. 1993)...........................................................................................4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
   473 U.S. 614 (1985).......................................................................................................5

*Opalinski v. Robert Half Int'l, Inc.*,
   761 F.3d 326 (3d Cir. 2014)...........................................................................................7

*In re Polyurethane Foam Antitrust Litig.*,
   998 F. Supp. 2d 625 (N.D. Ohio 2014)..........................................................................5

*Quilloin v. Tenet HealthSystem Phila., Inc.*,
   673 F.3d 221 (3d Cir. 2012)........................................................................................8, 9

*Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*,
   734 F.3d 594 (6th Cir. 2013) .........................................................................................8

*Reed v. Fla. Metro. Univ., Inc.*,
   681 F.3d 630 (5th Cir. 2012) .........................................................................................8

*Reyna v. Int'l Bank of Commerce*,
   839 F.3d 373 (5th Cir. 2016) .........................................................................................4

*Sanford v. Bracewell & Giuliani, LLP*,
   618 F. App'x 114 (3d Cir. 2015) ................................................................................2, 6

*Silfee v. Automatic Data Processing, Inc.*,
    696 F. App'x 576 (3d Cir. 2017) ...................................................................................4

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................................7, 8

*Suburban Cable TV Co. v. Local Union 1448*,
    1996 WL 328334 (E.D. Pa. June 14, 1996) ...............................................................4

**Statutes**

9 U.S.C. § 3 .........................................................................................................................9

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ............................................................1, 3, 4

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully submits this memorandum of law in support of its Motion to Compel Individual Arbitration and Stay Proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  As shown in this memorandum and the Declaration of John Comonitski ("Comonitski Declaration" or "Decl."), Plaintiffs must arbitrate their claims because they arise from purchases of vaccines from Merck pursuant to contracts that require arbitration of any controversy, claim or dispute arising out of or relating to the contracts.  Both federal law and Pennsylvania state law (which governs the contracts) require Plaintiffs to arbitrate their claims on an individual basis.  In addition to compelling arbitration, the Court should stay proceedings in this Court pending arbitration.[1]

## STATEMENT OF FACTS

**A.     Plaintiffs' Claims Arise from RotaTeq Purchases Pursuant to Contracts.**

Plaintiffs Sugartown Pediatrics, LLC ("Sugartown") and Schwartz Pediatrics S.C. ("Schwartz," with Sugartown, "Plaintiffs") allegedly purchased Merck's rotavirus vaccine (RotaTeq) pursuant to contracts negotiated by physician buying groups ("PBGs").  Consolidated Amended Class Action Complaint ("CAC") ¶¶ 9, 20, 118, 184 (ECF No. 12).  Plaintiffs allege that the contracts violate the federal antitrust laws because, according to Plaintiffs, the contracts have a "condition" that "required customers to buy all or nearly all of their pediatric rotavirus vaccines from Merck or face substantial price penalties on not only RotaTeq but also on all other

---

[1] This motion seeks to compel arbitration against Plaintiffs Sugartown Pediatrics, LLC and Schwartz Pediatrics S.C.  On July 23, 2018, an additional plaintiff, Margiotti & Kroll Pediatrics, P.C. ("Margiotti"), filed a complaint with the *In re Rotavirus Vaccines Antitrust Litigation* caption and case number that is substantially similar to the Consolidated Amended Class Action Complaint (the "Margiotti complaint").  The Margiotti complaint has not yet been served on Merck, but Merck notes that, in the event that Margiotti is added as a plaintiff in this proceeding, that plaintiff would also be required to arbitrate its claims for the same reasons, as shown in this motion, that Sugartown and Schwartz must arbitrate their claims.  *See* Decl. ¶¶ 2–4.

1

bundled Merck vaccines . . . ." *Id.* ¶ 4.[2] Plaintiffs seek to represent a class of direct purchasers that purchased RotaTeq directly from Merck. *Id.* ¶ 161.

Plaintiffs assert that the contracts "preserved Merck's monopoly power," had "the purpose and effect [] to unreasonably restrain competition," and "substantially foreclosed and excluded competition from rotavirus vaccine manufacturers." *Id.* ¶¶ 173, 180–82. Thus, according to Plaintiffs, "the challenged conduct caused plaintiffs and members of the proposed class to pay artificially inflated prices for rotavirus vaccines." *Id.* ¶ 175. Plaintiffs seek damages under the federal antitrust laws. *Id.* ¶ 189.

    **B.**    **Plaintiffs Agreed to Arbitrate** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Both Plaintiffs purchased RotaTeq pursuant to a PBG contract with Merck during the proposed class period (April 2014 to the present). In particular, Sugartown purchased RotaTeq from Merck pursuant to a contract negotiated by Main Street Vaccines ("MSV") (now known as NDC MSV) on behalf of Sugartown and any other pediatric practice that became a member of the MSV buying group ("MSV Contract"). Decl. ¶¶ 2-4 & Ex. 1.[3] Schwartz purchased RotaTeq from Merck pursuant to a contract negotiated by CCPA Purchasing Partners LP ("CCPA") on

---

[2] As shown in Merck's Motion to Dismiss the Consolidated Amended Class Action Complaint (submitted today as an alternative to this motion in the event that the Court were to deny this motion), the CAC fails to state an antitrust claim.

[3] "Ex." refers to the Exhibits attached to the Comonitski Declaration. Because a motion to compel arbitration is typically resolved under the motion to dismiss standard, the Court may consider the pleadings and documents relied upon in, or otherwise integral to, the Complaint. *See, e.g., Sanford v. Bracewell & Giuliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015) (allowing a court to consider the complaint and "documents relied upon in the complaint" in deciding a motion to compel arbitration (citation omitted)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that "a document *integral to or explicitly relied* upon in the complaint may be considered" at the motion to dismiss stage (internal quotation marks and emphasis omitted)).

behalf of Schwartz and any other pediatric practice that became a member of the CCPA buying group ("CCPA Contract"). Decl. ¶¶ 5–7 & Ex. 2. Both Plaintiffs reaped the benefits of those contracts by, for example, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* Exs. 1 & 2 at Sched. D; *see also* CAC ¶¶ 119–20 (describing PBGs and "contract prices"), 184. Thus, Sugartown and Schwartz have remained members of the MSV and CCPA buying groups, respectively, throughout the proposed class period. Decl. ¶¶ 4, 7.[4]

Both contracts include the following arbitration clause:



Exs. 1 & 2, § 9.10. Although Plaintiffs did not sign the contracts, the signatories (CCPA and MSV) explicitly acknowledged in the contracts that they ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉." Exs. 1 & 2, § 2.1. Thus, CCPA and MSV obligated themselves to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉." Exs. 1 & 2, § 4.6.

## ARGUMENT

Arbitrability is a "gateway issue" that the Court must address before deciding a motion to dismiss. *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017)

---

[4] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Exs. 1 & 2 § 9.1. Although either Merck or the PBGs ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, *id.* § 9.2 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Decl. ¶¶ 2, 5.

(quoting *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016)).  "Courts must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  Federal policy, expressed through the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, favors arbitration.  "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability," and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."  *Emp'r. Trs. of W. Pa. Teamsters v. Union Trs. of W. Pa. Teamsters*, 870 F.3d 235, 240–41 (3d Cir. 2017) (citation omitted).  "The presumption of arbitrability is particularly strong where the arbitration clause uses broad language."  *Suburban Cable TV Co. v. Local Union 1448*, 1996 WL 328334, at *2 (E.D. Pa. June 14, 1996).

Parties must arbitrate their claims when "there is a valid agreement to arbitrate between the parties" and "the merits-based dispute in question falls within the scope of that valid agreement."  *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 527 (3d Cir. 2009).  The party opposing enforcement of the arbitration agreement "bears the burden" of proving that the claims are not subject to arbitration.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  To overcome this presumption as applied to broad arbitration agreements, a party "must either: (1) establish the existence of 'an[] express provision excluding [the] grievance from arbitration'; or (2) provide 'the most forceful evidence of a purpose to exclude the claim from arbitration.'"  *Lenox Corp. v. Blackshear*, 226 F. Supp. 3d 421, 432 (E.D. Pa. 2016) (alterations in original) (quoting *Lukens Steel Co. v. United Steelworkers of Am.*, 989 F.2d 668, 673 (3d Cir. 1993)).

There can be no doubt that the Plaintiffs' claims arise out of the contracts and must, therefore, be arbitrated.  Plaintiffs cannot meet their burden to establish otherwise.

I.      **PLAINTIFFS MUST ARBITRATE THEIR CLAIMS**

    A.      **Plaintiffs' Claims Are Within the Scope of the Arbitration Agreements.**

Plaintiffs agreed to arbitrate any ███████████████████████████████ ███████████████" of the contracts pursuant to which Plaintiffs purchased RotaTeq. Exs. 1 & 2, §§ 4.6, 9.10. Plaintiffs' antitrust claims are one such ███████████████████. Federal courts regularly hold that antitrust claims fall within the scope of agreements, such as those at issue here, to arbitrate any controversy or claim arising out of or relating to the contract. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 614–15 (1985) (holding that a clause requiring arbitration of all claims "arising out of" a contract covered Sherman Act claims); *Abrams v. Chesapeake Energy Corp.*, No. 16-cv-1343, 2017 WL 6541511, at *6 (M.D. Pa. Dec. 21, 2017) (compelling arbitration of Sherman Act claims); *In re Polyurethane Foam Antitrust Litig.*, 998 F. Supp. 2d 625, 645 (N.D. Ohio 2014) (compelling arbitration of direct purchaser's price-fixing claims).

Pennsylvania law, which governs the contracts, accords with the federal courts on this point.[5] Pennsylvania law construes an arbitration provision covering "[a]ny controversy or claim arising out of or relating to [a contract]" broadly. *See Abrams*, 2017 WL 6541511, at *7 (citing *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000)); *see also Battaglia*, 233 F.3d at 727 (stating that the Supreme Court of Pennsylvania has held that an agreement or order to arbitrate a particular grievance "should not be denied unless it may be said with positive assurance that the arbitration clause [involved] is not susceptible to an interpretation that covers the asserted dispute" (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)

---

[5] Both contracts are ████████████████████████████████████████ ████████████████" Exs. 1 & 2, § 9.11.

5

and citing *Lincoln Univ. of the Commw. Sys. of Higher Ed. v. Lincoln Univ. Chapter of the Am. Ass'n of Univ. Professors*, 354 A.2d 576, 581–82 (Pa. 1976))).

In short, there is no basis under federal or Pennsylvania law to conclude that the Plaintiffs' antitrust claims are outside the scope of the arbitration agreements.

**B.   Plaintiffs Are Bound by the Arbitration Agreements.**

The PBGs entered into and signed the contracts with Merck on behalf of themselves and their members. Exs. 1 & 2, § 2.1. Thus, even though Plaintiffs did not execute the contracts,  Exs. 1 & 2, § 4.6. Moreover, even if the contracts ▮▮▮, Plaintiffs would still have to arbitrate their claims because they reaped the benefits of the contracts. *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010) (non-signatory is bound to an arbitration clause "when that non-signatory has reaped the benefits of a contract containing an arbitration clause"); *see also Esis*, 2016 WL 928667, at *8 ("A nonsignatory to a contract may be bound by an arbitration clause if the nonsignatory embraces the agreement and directly benefits from it." (internal quotations omitted)).

Courts regularly compel non-signatories to arbitrate claims under these circumstances. *See, e.g., Sanford*, 618 F. App'x at 118–19 (concluding that arbitration of non-signatory's claims was required because she had sought to "claim the benefit of the contract and simultaneously avoid its burdens" (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001))); *Esis, Inc. v. Coventry Health Care Workers Comp., Inc.*, No. 13-cv-2957, 2016 WL 928667, at *8 (E.D. Pa. Mar. 9, 2016)

6

(concluding that non-signatory's claims were barred by arbitration clause in agreement signed by defendants because non-signatory had "embrace[d]" the agreement by seeking to enforce the agreement's provisions against defendants).  In essence, courts rely on the estoppel doctrine to prevent a non-signatory from "cherry-picking the provisions of a contract that it will benefit from and ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)."  *Invista*, 625 F.3d at 85; *see also*, *e.g.*, *Aluminum Bahrain B.S.C. v. Dahdaleh*, 17 F. Supp. 3d 461, 470 (W.D. Pa. 2014).

In sum, both the contracts themselves and the estoppel doctrine compel the conclusion that Plaintiffs are bound by the arbitration agreements.

## II. PLAINTIFFS MUST ARBITRATE ON AN INDIVIDUAL BASIS

Once the Court concludes that Plaintiffs must arbitrate their claims, the Court—not an arbitrator—must decide whether to compel individual or class arbitration.  *See Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 332 (3d Cir. 2014) (holding that "whether an agreement provides for classwide arbitration is a question of arbitrability to be decided by the District Court" (internal quotations omitted)); *see also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 751 (3d Cir. 2016) (applying *Opalinski* to affirm the district court's order vacating the arbitrator's decision).  There is no basis to compel anything other than individual, bi-lateral arbitration between Plaintiffs and Merck.  The Supreme Court has made clear that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  And, importantly here, the Court cannot infer an implicit agreement to authorize class-action arbitration from the mere fact of the parties' agreement to arbitrate: "[t]his is so because class-action arbitration changes the nature of arbitration to such a degree

that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* at 685.

The silence in the arbitration agreements on the topic of class arbitration is dispositive: "[s]ilence regarding class arbitration generally indicates a prohibition." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012). "Several other Circuits, including the Fifth, Sixth, Seventh, Eighth, and Ninth, have likewise stated that 'silence' in an agreement regarding class arbitration generally indicates that it is not authorized by the agreement." *Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC*, No. 14-cv-0620, 2017 WL 1541659, at *4 (M.D. Pa. Apr. 28, 2017) (quotations omitted) (citing *Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 704 (9th Cir. 2014) (affirming the district court's grant of a motion to strike class allegations, where the arbitration agreement did not mention class arbitration); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643–44 (5th Cir. 2012) (finding that silence in an agreement does not "constitute[ ] consent to class arbitration"); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728–29 (8th Cir. 2001) (holding that the district court did not err by compelling individual, rather than class, arbitration because the relevant agreements were silent as to class arbitration); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995) (stating "the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter")).

Given that no contractual basis exists to conclude that the parties consented to class arbitration, the Court should issue an order compelling Plaintiffs to arbitrate on an individual basis.

### III. THE COURT SHOULD STAY PROCEEDINGS PENDING ARBITRATION

When a motion to compel arbitration is granted in the Third Circuit, "a stay, rather than a dismissal, is the required course of action." *Quilloin*, 673 F.3d at 227 n.2 (citation omitted); *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (holding that the district court is "obligated under 9 U.S.C. § 3 to grant the stay once it decided to order arbitration"). The stay allows this Court to retain jurisdiction over any ancillary issues and to enter a judgment on the award. *Lloyd*, 369 F.3d at 270.

### CONCLUSION

For the foregoing reasons, the Court should enter an order compelling Plaintiffs to arbitrate their claims on an individual basis and stay the proceedings in this Court pending arbitration.

Dated: July 30, 2018

By: */s/ Lisa C. Dykstra*
Lisa C. Dykstra
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103
Tel: (215) 963-5000
lisa.dykstra@morganlewis.com

Andrew Lazerow (*admitted pro hac vice*)
Ashley Bass (*admitted pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-6000
alazerow@cov.com
abass@cov.com

*Attorneys for Defendant*
*Merck Sharp & Dohme Corp.*

9

## CERTIFICATE OF SERVICE

I, Lisa C. Dykstra, do hereby certify that I have served a true and correct copy of the foregoing Motion to Compel Individual Arbitration and Stay Proceedings and accompanying Memorandum in Support of Defendant's Motion in redacted form on all parties/counsel via ECF on July 30, 2018.

The unredacted version of this document has been filed under seal in paper and electronic form with the Clerk.

*/s/ Lisa C. Dykstra*
Lisa C. Dykstra
